1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DENNIS R. LARSEN,                    Case No. 1:10-CV-00936-JLT

12              Plaintiff,               ORDER REGARDING PLAINTIFF'S
                                         SOCIAL SECURITY COMPLAINT
13       vs.
                                         ORDER DIRECTING THE ENTRY OF
14                                       JUDGMENT FOR DEFENDANT
                                         COMMISSIONER OF SOCIAL SECURITY
15   MICHAEL ASTRUE,                     AND AGAINST PLAINTIFF
     Commissioner of Social Security,    DENNIS R. LARSEN
16
                Defendant.
17   _____/

18       Dennis R. Larsen ("Plaintiff") asserts he is entitled to Supplemental Security Income ("SSI")

19   benefits.  Plaintiff argues the administrative law judge ("ALJ") erred in rejecting Plaintiff's

20   testimony and evaluating the medical evidence.  In addition Plaintiff asserts the ALJ failed to apply

21   both SSR 85-15 and 00-4p properly.  Therefore, Plaintiff seeks judicial review of the administrative

22   decision denying his claim for SSI benefits.  For the reasons set forth below, the Court affirms.

23                          **PROCEDURAL HISTORY**[1]

24       Plaintiff filed an application for SSI benefits on August 22, 2007, alleging disability

25   beginning February 20, 2007.  AR at 95-104.  The Social Security Administration denied Plaintiff's

26   claim on December 21, 2007, and upon reconsideration denied the claim again on March 25, 2008.

27   _____

28       [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
     number.

                                          1

*Id.* at 46-49, 51-55.  After requesting a hearing, Plaintiff testified on March 17, 2009 before an ALJ, who determined Plaintiff was not disabled, and issued an order denying benefits on July 30, 2009.  *Id.* at 10-20, 21-40.

Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security, which was denied on March 18, 2010.  AR at 1-4.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for SSI benefits under Title II of the Social Security Act, Plaintiff must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which

1    he lives, or whether a specific job vacancy exists for him, or whether he would be hired

2    if he applied for work.

3    42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on the claimant to establish disability.  *Terry v.*

4    *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  By showing an inability to perform past relevant

5    work, a claimant establishes a prima facie case of disability.  *Maounis v. Heckler*, 738 F.2d 1032,

6    1034 (9th Cir. 1984).  If this is shown, the burden shifts to the Commissioner to prove the claimant is

7    able to engage in other substantial gainful employment.  *Id.*

8                              **<u>DETERMINATION OF DISABILITY</u>**

9            To achieve uniform decisions, the Commissioner established a sequential five-step process

10   for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f) (2010).  The process

11   requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the

12   period of alleged disability, (2) had medically determinable severe impairments (3) that met or

13   equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and

14   whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the

15   ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In

16   making these determinations, the ALJ must consider objective medical evidence and opinion

17   (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

18           A.  Relevant Medical Evidence

19           Plaintiff has been treated by Stanislaus County Behavioral Health and Recovery Services

20   from 2002 to 2006.  AR at 175-97.  Plaintiff was admitted to Emanuel Medical Center on December

21   28, 2002, in a coma following an overdose of Elavil, Ativan, and Zyprexa.  *Id.* at 178.  Plaintiff

22   stated that he had no suicidal intentions and explained that he was instead trying to "see how much

23   he can take without overdosing," something that he claimed he occasionally did.  *Id.*  Upon release,

24   Plaintiff was given a global assessment of functioning ("GAF") score of 45.[2]  *Id.* at 179.  On March

---

26   [2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and
27   occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association,
     <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed.)("DSM-IV").  A GAF score between 41-50 indicates
28   "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments
     in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.*

5, 2006, Plaintiff was admitted at Stanislaus Behavioral Health Center after being cleared by Emanuel Medical Center with a GAF score of 30 following another suicide attempt by means of overdose.[3]  *Id.* at 181.  Plaintiff reportedly took 180 pills of Ativan along with two beers in an attempt to kill himself.  *Id.*  On March 10, 2005, upon discharge Plaintiff was diagnosed with bipolar II disorder, alcohol abuse, and a GAF score of 55.[4]  *Id.*  Plaintiff's prognosis was "guarded" based on whether he attended counseling and recommended follow-ups.  *Id.* at 185.

Plaintiff has received psychiatric treatment from Dr. Jonathan T. Cheang from 2005 to 2008. *Id.* at 204-30, 273-305.  Dr. Cheang completed a psychiatric evaluation of Plaintiff in 2005, where he noted Plaintiff suffered some and confirmed the diagnosis of Bipolar II disorder while giving him a GAF score of 60-65.[5]  *Id.* at 223-24.  Throughout treatment with Dr. Cheang, Plaintiff reported feeling anxiety due to stress at work.  *Id.* at 204-30, 273-305.  However, Plaintiff stated that medication helped with his anxiety.  *Id.* At 206, 277.

Plaintiff was treated at Emanuel Medical Center for pain in his right ankle on April 30, 2007. *Id.* at 199.  At that time he did not express any pain or discomfort in his back or shoulders.  *Id.*  Dr. Hector Lopez diagnosed Plaintiff with gout and prescribed medication to treat the.  *Id.* at 200.

Dr. Adi Klein conducted a comprehensive internal medicine evaluation of the Plaintiff on October 16, 2007.  *Id.* at 231.  Dr. Klein found Plaintiff to be a "pleasant gentleman" and noted Plaintiff had not worked since March 2006 because of psychiatric problems and gout.  *Id.*  Plaintiff reported "some back pain" at this evaluation but the doctor did not evaluate the condition.  *Id.*  Dr. Klein concluded that Plaintiff was "in no acute distress" and noted his impression that Plaintiff

---

[3] A GAF score between 21-30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  *DSM-IV* at 34.

[4] A GAF score between 51-60 indicates "[s]ome mild symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.

[5] A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning… but generally functioning pretty well, has some meaningful interpersonal relationships."  *DSM-IV* at 34.

1  suffered from "back pain due to obesity," gout with no current flares, and depression. *Id.* at 232-34.

2  The doctor determined that Plaintiff would be able to lift and carry fifty pounds occasionally and

3  twenty five pounds frequently, as well as stand, walk, or sit for up to six hours. *Id.* at 234.

4      Dr. Charles A. Fracchia conducted a physical residual functional capacity ("RFC")

5  assessment of Plaintiff on October 25, 2007. *Id.* at 236-40. Dr. Fracchia noted Plaintiff was capable

6  of lifting and carrying fifty pounds occasionally and twenty five pounds frequently, and could stand,

7  walk, or sit for "about six hours in an eight-hour workday." *Id.* at 237. Plaintiff was not limited in

8  his ability to push or pull. *Id.* Dr. Fracchia concluded that Plaintiff's allegation of low back pain

9  was "partially credible" based on some evidence but that his alleged limitation in function was "not

10  supported by objective evidence at CE [and a] lack of any pain medication." *Id.* at 240.

11      On November 20, 2007, Dr. Manolito Castillo completed a psychiatric evaluation of

12  Plaintiff. *Id.* at 241-44. Dr. Castillo diagnosed Plaintiff with Bipolar II disorder, panic disorder with

13  agoraphobia and general anxiety disorder. *Id.* at 243. He diagnosed Plaintiff also with alcohol abuse

14  in early remission, after Plaintiff reported being sober since September 2007. *Id.* at 242-43. Dr.

15  Castillo assigned Plaintiff a GAF score of 65. *Id.* at 243. He opined that Plaintiff had a marked

16  limitation in his ability to socially interact with others at an age-appropriate level, as well as

17  moderate limitations in his ability to complete complex and detailed tasks, and to concentrate for two

18  hour increments at a time in order to maintain a regular work schedule. *Id.* The doctor found no

19  limitations on Plaintiff's ability to understand instructions, sustain an ordinary routine without

20  sustained supervision, or complete simple tasks. *Id.*

21      Dr. Kelly J. Loomis completed a psychiatric review technique of Plaintiff on December 13,

22  2007 and a mental health RFC. *Id.* at 245-58. She noted that Plaintiff suffered from moderate

23  difficulties in maintaining social functioning, concentration, persistence and pace. *Id.* at 253. Also,

24  the report noted that Plaintiff experienced "one or two" repeated episodes of decompensation for

25  extended duration, but that there was also insufficient evidence in this area. *Id.* Dr. Loomis noted

26  no restrictions of activities of daily living. *Id.*

27      Dr. Loomis noted moderate limitations on Plaintiff's ability to understand and remember or

28  carry out detailed instructions. *Id.* at 256. Dr. Loomis determined also that Plaintiff had marked

5

limitations in his ability to interact appropriately with the general public. *Id.* at 257. The doctor

concluded that Plaintiff was able to complete simple "1-2 step job tasks and instructions,"

concentrate for two hour increments, sustain "8 hr/40 hr work schedules" on a regular basis, and

relate to and accept direction from supervisors. *Id.* at 257. It was noted that Plaintiff would have

"some difficulty" remaining socially appropriate with co-workers or the public. *Id.*

Plaintiff received treatment at Family Medical Group from 2007 to 2008. *Id.* at 314-43. Dr.

James MacLaren treated Plaintiff's right wrist on August 6, 2007 and, after reviewing an x-ray film,

diagnosed a closed fracture of the scaphoid. *Id.* at 330. Plaintiff was reexamined by Dr. Paul

Caviale on August 23, 2007, who noted irregularities in the scaphoid but disagreed that the bone had

been fractured. *Id.* at 331. On November 8, 2007, Plaintiff underwent an x-ray of his left shoulder

which led to an impression of calcific tendinitis. *Id.* at 340. Dr. MacLaren examined Plaintiff again

on July 31, 2008, to address low back pain. *Id.* at 316-17. The doctor found no irregularities and

prescribed medication and a follow-up visit. *Id.* On October 14, 2008, Dr. MacLaren reexamined

Plaintiff's back and ordered an MRI, which revealed degenerative changes in his lumbar spine, but

no other abnormalities or evidence of disc herniation on October, 28, 2008. *Id.* at 314-15, 339.

Plaintiff received treatment at Emanuel Medical Center for right shoulder pain on November

28, 2008. *Id.* at 344-52. An x-ray indicated no abnormalities and Plaintiff was diagnosed with a

shoulder sprain and a rotator cuff tear. *Id.* at 348, 352.

On January 19, 2009, Dr. James MacLaren completed a questionnaire regarding Plaintiff's

physical capabilities. *Id.* at 363. He noted that Plaintiff's primary impairments were Bipolar

disorder and low back pain. *Id.* Dr. MacLaren indicated that did not believe that Plaintiff's medical

conditions would preclude him from working at any exertion level and would not limit him to only

sedentary work. *Id.* Dr. MacLaren believed that Plaintiff was limited to only occasional lifting of

twenty pounds but could manage frequent lifting of ten pounds during an eight-hour workday. *Id.*

The doctor noted that Plaintiff was capable of sitting for thirty minutes at a time and able to stand for

two hours at a time before needing rest. *Id.* Dr. MacLaren based his conclusions on Plaintiff's

reports of his condition. *Id.* Dr. MacLaren further noted that Plaintiff would be able to sit, stand, or

walk for a maximum of six hours out of an eight hour workday. *Id.*

1    B.   Hearing Testimony

2         On March 17, 2009, Plaintiff testified at a hearing before the ALJ, at which time Plaintiff was

3    fifty-three years old.  AR at 23.  Plaintiff stated he was married and lived with his wife and eighteen

4    year old daughter.  *Id.* at 24.  Plaintiff reported that he completed the twelfth grade.  *Id.*  He testified

5    he was able to bathe and dress himself and prepare meals like breakfast without assistance.  *Id.* at 33.

6    He reported that he relied on his wife and daughter to do "heavy duty" things like lifting.  *Id.*

7    Plaintiff stated that he went on forty-five minute walks or bicycle rides by himself around two to

8    three times a week.  *Id.* at 35.  Plaintiff said that he had no other regular social activities or contact.

9    *Id.*  Plaintiff stated that he had not consumed alcohol in a year and a half.  *Id.* at 39.

10        Plaintiff testified that the last job he held was assembling business machines that folded and

11   sealed envelopes.  *Id.* at 25, 36.  He stated that his reason for leaving that job was long term

12   disability due to psychological issues.  *Id.* at 25.  Plaintiff felt that he could not emotionally handle a

13   full time job.  *Id.*  Plaintiff reported that he suffered from "panic attacks related to stress" from

14   normal functions at work, and that even simple things that are associated with working over an eight

15   hour period are enough to stress him.  *Id.* at 26- 27.

16        Plaintiff testified that he had difficulty concentrating on a task for longer than ten minutes at

17   a time, including household tasks such as making repairs or assembling furniture.  *Id.* at 27.  As a

18   result, Plaintiff stated that he got confused and was unable to follow instructions.  *Id.*  He reported

19   that he had received treatment for psychological issues since 1994, but his condition had worsened.

20   *Id.* at 25.  Plaintiff testified that he was hospitalized in a psychiatric facility in Modesto and was

21   receiving treatment from a psychiatrist, Dr. Cheang, at the time of the hearing.  *Id.* at 28.  He stated

22   that he had been diagnosed with bipolar disorder, which made him generally more anxious than

23   depressed.  *Id.*  Plaintiff described his condition as "sixty/forty" when measuring the ratio of anxiety

24   to depression that he experiences.  *Id.*

25        Plaintiff testified that he was unable to stand for more than an hour at a time due to low back

26   pain.  *Id.* at 29.  He stated that if he was allowed to rest between periods of standing, he would be

27   able to tolerate at most five hours of standing a day.  *Id.*  He noted sitting was easier for him, and that

28   in normal day he sat for around six hours and lay down for about an hour.  *Id.*  Plaintiff said the most

1  he could lift was fifty pounds at his last job, and since then the heaviest thing he has lifted is a

2  "gallon of milk." *Id.* at 29-30.

3       Plaintiff stated he had problems and pain with his right hand and wrist, which was his

4  dominant hand. *Id.* He confirmed that he "had a fracture there" as well as "some arthritis." *Id.*

5  Plaintiff estimated that he could only use his hand for ten to fifteen minutes at a time before he

6  needed to rest it for about fifteen minutes. *Id.* Also, he reported that he suffered "a little bit of pain"

7  in his right shoulder which caused problems for him to reach overhead. *Id.* At 31. Plaintiff claimed

8  he was capable of reaching overhead but not for eight hours a day. *Id.* Plaintiff stated his shoulder

9  injury would not prevent him from being able to "reach forward all day to an assembly belt." *Id.*

10  Further, Plaintiff testified that he was diagnosed with gout, but that it was effectively controlled with

11  medication and would not impede his ability to work. *Id.* at 32.

12       Vocational expert ("VE") Mr. Schmidt testified after the Plaintiff. The VE characterized the

13  Plaintiff's past relevant work as "office machine servicer, 633281018, light, SVP 7" with a "lifting

14  performance of at medium." *Id.* at 36. The VE then responded to hypothetical questions posed by

15  the ALJ. First, the ALJ asked the VE to consider "a person of the same age, education, and work

16  experience as the claimant" who had a "marked limitation of the ability to socially interact with

17  others at an age appropriate level." *Id.* at 37. The ALJ indicated that the hypothetical person had no

18  limits on his ability to understand instructions, sustain a routine without continuous supervision,

19  complete simple tasks, or avoid normal hazards. *Id.* The individual had a "moderate limitation" in

20  his ability to complete complex tasks and concentrate for at least two hours at a time. *Id.*

21       In response, the VE opined such a person would not be able to perform the claimant's past

22  relevant work. *Id.* at 37. The VE further testified that the combined moderate limitations on

23  completing complex tasks and ability to concentrate would preclude employment in other jobs in the

24  "national or regional economies." *Id.* at 37-38.

25       Next, the VE assumed a person of "same age, education, and work experience as the

26  claimant" that was limited to "light work" and only able to complete simple, repetitive tasks. *Id.* at

27  39. This time, the ALJ added the restrictions of no public contact and "little or no interactions

28  required with co-workers or supervisors." *Id.* The VE opined there would be several positions

1   available for such a person including "cleaning positions, 323687014, light, SVP 2, 16,000.

2   Assembly, 813684022, light, SVP 2, 14,000.  Packager, 920685026, light, SVP 2, 25,000." *Id.*

3           C.   The ALJ's Findings

4           Pursuant to the five-step process, the ALJ determined Plaintiff has not engaged in substantial

5   gainful activity since the application date of February 20, 2007.  AR at 15.  Second, the ALJ found

6   Plaintiff has the following severe impairments: back impairment, gout, bipolar disorder, and

7   substance abuse disorder in remission.  *Id.*  In determining the effects Plaintiff's mental impairments,

8   the ALJ concluded Plaintiff had mild restrictions with activities of daily living; marked difficulties in

9   social functioning; mild difficulties with regard to concentration, persistence, or pace; and

10  experienced one to two episodes of decompensation, each of extended duration.  *Id.* at 16.

11  Therefore, Plaintiff had no impairment, or combination of impairments, that meet or medically equal

12  a listing.  *Id.* at 15.

13          At the fourth step, to determine Plaintiff's RFC, the ALJ considered "the entire record."  AR

14  at 17; *see also* AR at 17-19.  The ALJ determined Plaintiff had the RFC "to perform light work as

15  defined in 20 CFR 404.1567(b) and simple repetitive tasks in nonpublic environment with little or no

16  contact with supervisors and co-workers."[6]  *Id.* at 17.  Plaintiff did not have past relevant work to

17  which he could return.  *Id.* at 19.  The ALJ determined that despite having the RFC to perform "light

18  work," his ability to perform all the requirements of that level of work was "impeded by additional

19  limitations."  *Id.* at 20.  However, the ALJ concluded that Plaintiff was still capable of performing

20  jobs existing in significant numbers in the national economy, such as cleaning position, assembler,

21  and packager.  *Id.*

22                          **DISCUSSION AND ANALYSIS**

23  Plaintiff argues that the ALJ erred in improperly rejecting Plaintiff's testimony regarding the limiting

24  effects of his impairments as well as the opinions of Dr. Castillo and Dr. MacLaren.  (Doc. 14 at 10).

25

26  _____

27      [6]  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
    weighing up to 10 pounds."  1983 SSR LEXIS 30.  Further, the definition states "A job is also [light work] when it
    involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require

28  greater exertion than sedentary work."  *Id.*

1   Furthermore, Plaintiff argues that the ALJ committed reversible error by failing to apply both SSR

2   85-15 and 00-4p.  *Id.*

3       A.   The ALJ properly discounted the credibility of Plaintiff's testimony.

4   In determining credibility, an ALJ must determine first whether objective medical evidence shows an

5   underlying impairment "which could reasonably be expected to produce the pain or other symptoms

6   alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v.*

7   *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Here, the ALJ found Plaintiff's "medically

8   determinable impairments could reasonably be expected to cause the alleged symptoms."  AR at 17.

9   However, the ALJ determined Plaintiff lacked credibility regarding the "intensity, duration and

10  limiting effects of [his] symptoms." *Id.*  Nevertheless, Plaintiff argues that the ALJ did not provide

11  clear and convincing reasons to reject Plaintiff's testimony regarding his inability to concentrate and

12  the panic attacks he suffered due to stress at work.  (Doc. 14 at 14).  Although the ALJ cited to

13  evidence in her findings, Plaintiff contends that none of it disproves or discredits Plaintiff's

14  testimony.  *Id.* at 15.

15      1.   The ALJ's Findings

16      An adverse finding of credibility must be based on clear and convincing evidence where there

17  is no affirmative evidence of a claimant's malingering and "the record includes objective medical

18  evidence establishing that the claimant suffers from an impairment that could reasonably produce the

19  symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

20  (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony only because it is unsupported by

21  objective medical evidence. *See Bunnell*, 947 F.2d at 347-48.  The ALJ "must identify what

22  testimony is not credible and what evidence undermines the claimant's complaints." *Lester v.*

23  *Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Credibility

24  findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

25  claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's

26  testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

27      Here, the ALJ found Plaintiff's subjective complaints were unsupported by the objective

28  medical evidence, his lack of taking strong pain medication, his positive response to the treatment

1   and medication he was taking, his ability to participate in daily activities, and his ability to attend and

2   participate in the hearing.  AR at 17-18.

3   *Objective Medical Evidence*

4   Generally, "conflicts between a [claimant's] testimony of subjective complaints and the

5   objective medical evidence in the record" can constitute "specific and substantial reasons that

6   undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

7   1999).  The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole

8   ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

9   relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

10  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th

11  Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain

12  testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR

13  LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical

14  evidence" in determining credibility, but statements "may not be disregarded solely because they are

15  not substantiated by objective medical evidence").

16  In citing the medical evidence as part of a credibility determination, it is not sufficient for the

17  ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v.*

18  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to

19  support an adverse credibility determination").  Rather, the ALJ "must state which [part of]

20  testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12

21  F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony

22  she or he finds not to be credible and must explain what evidence undermines the testimony").

23  Here, the ALJ noted that x-rays of Plaintiff's shoulder were normal. *Id.* at 18.  Dr. Klein, an

24  examining physician, found Plaintiff had "no joint tenderness and full range of motion of all joints"

25  as well as normal motor tone, strength, gait and ability to change positions such as getting on and off

26  the examining table. *Id.*  The ALJ noted that Dr. Klein assessed that Plaintiff could "lift and carry 25

27  pounds frequently and 50 pounds occasionally"; stand, walk, or sit for six hours out of an eight hour

28  workday; and "had no other work related limitations." *Id.*

11

1   Also, the ALJ cited the medical evidence about Plaintiff's mental impairments. *Id.* She

2   considered Dr. Klein's observation that Plaintiff's "memory and attention were good," and was not

3   easily distracted. *Id.* The ALJ relied upon Dr. Castillo's opinion that, though Plaintiff had marked

4   limitation in interacting with others and moderate limitations in completing certain tasks and

5   concentrating, Dr. Castillo assigned Plaintiff a GAF score of 65. *Id.* This score reflects that Plaintiff

6   is "generally functioning pretty well, [and] has some meaningful interpersonal relationships." *DSM-*

7   *IV* at 34. These inconsistencies were proper considerations for the ALJ in evaluating Plaintiff's

8   credibility. Thus, the ALJ did not err in relying upon the medical evidence.

9        *Medication and Treatment*

10   The ALJ found that Plaintiff was "not taking the type of pain medication associated with

11   severe disabling pain" and that his gout is under control with current medication. AR at 17. She

12   noted that Plaintiff reported "[feeling] less anxious with his medications" and that "he is showing

13   improvement with treatment." *Id.* at 18.

14   In assessing Plaintiff's credibility, the ALJ may consider "the type, dosage, effectiveness, and

15   side effects of any medication." 20 C.F.R. § 404.1529(c). Further, the treatment Plaintiff received,

16   especially when it is conservative, is a legitimate consideration in a credibility finding. *See Meanel*

17   *v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to

18   prescribe, and the claimant's failure to request, medical treatment commensurate with the

19   "supposedly excruciating pain" alleged). The Ninth Circuit has "indicated that evidence of

20   'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

21   impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

22   Plaintiff contends that he still has symptoms "despite the fact that he is medicated." (Doc. 14

23   at 15). Though acknowledging that Plaintiff's impairments could reasonably cause his symptoms,

24   the ALJ found Plaintiff's statements lacked credibility regarding the "intensity, persistence and

25   limiting effects" of those symptoms. AR at 17. This was reflected in the ALJ's RFC assessment that

26   noted Plaintiff's "additional limitations" beyond his capability to perform light work. *Id.* at 20.

27   However, a condition that can be adequately controlled with medication and conservative treatment

28   cannot be the basis of a claim for disability benefits. *See Warre v. Comm'r of the SSA*, 439 F.3d

1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not

disabling for the purpose of determining eligibility for SSI benefits").  Therefore, the success of the

treatment of Plaintiff's gout and anxiety problems without using strong pain medication, was a

relevant factor for the ALJ to consider in finding Plaintiff lacked credibility.

*Activities of Daily Living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the

performance of physical functions that are transferable to a work setting, a specific finding as to this

fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec.

Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603.  For example, a claimant's

ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find

of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*,

400 F.3d at 680 (finding a claimant who could care for her personal needs, cook, clean, shop, and

manage her own finances "quite functional").  Likewise, an ALJ may conclude "the severity of . . .

limitations were exaggerated" when a claimant exercises, gardens, and participates in community

activities.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ noted that Plaintiff reported that he spends a majority of his day walking or

riding a bicycle, and that he is able to do household chores, such as laundry.  AR at 18.  Furthermore,

Plaintiff is able to watch television, make meals, do minor housework, shop, take care of his own

personal needs, and do cleaning like dishes and sweeping.  *Id.*  Therefore, the ALJ properly

considered Plaintiff's daily activities in evaluating Plaintiff's credibility.

*ALJ's Personal Observations*

When an ALJ includes personal observations of a claimant during the hearing, the decision is

not improper if other evidence supports the determination.  *Nyman v. Heckler*, 779 F.2d 528, 531

(9th Cir. 1986); *Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ

during the hearing, along with other evidence, is substantial evidence for rejecting testimony).  Here,

the ALJ noted that Plaintiff was "capable of attending the hearing and participating in his own

behalf."  AR at 18.  Relying on these observations was proper.

///

*Conclusion*

Consequently, because the ALJ provided legally sufficient reasons for an adverse credibility finding, that were supported by the record, her finding was proper.

B.   The ALJ did not err in evaluating the medical opinions.

Plaintiff argues that the ALJ improperly disregarded the opinion of an examining physician, Dr. Castillo, as well as the opinion of his treating physician, Dr. MacLaren, by failing to state specific and legitimate reasons supported by substantial evidence for giving these opinions the weight she did.  (Doc. 14 at 10-14).

In explaining the above findings, the ALJ gave the opinion of Dr. MacLaren, a treating physician, "moderate weight" and noted that the record supported his opinion that Plaintiff was able to work and that the his opinions on the limitations of how long Plaintiff can sit or walk without rest was a "restatement of the claimant's allegations and not his own opinion."  AR at 19.  The ALJ gave the opinion of Dr. Klein, an examining physician, "great weight" due to his "thorough evaluation" of the plaintiff and the fact that he was "an expert in his field" of internal medicine.  *Id.*

*Opinion of Dr. Castillo*

Plaintiff argues that the ALJ erred by rejecting the assessment of examining psychologist, Dr. Castillo, and by failing to give specific and legitimate reasons for doing so.  (Doc. 14 at 11). Plaintiff asserts Dr. Castillo concluded Plaintiff had "moderate impairments in concentrating for two-hour increments in order to maintain a regular work schedule."  *Id.*  Plaintiff contends this limitation was conveyed in the ALJ's initial hypothetical to the VE, but that she failed to include it in the second.  *Id.*  Plaintiff argues this amounts to a rejection of Dr. Castillo's assessment.  *Id.* Plaintiff contends the ALJ also rejected Dr. Castillo's assessment that Plaintiff had "marked limitation in interacting with others in an age-appropriate manner."  *Id.*

However, the ALJ's second hypothetical sufficiently incorporated Dr. Castillo's assessment that Plaintiff suffered from moderate limitations in his ability to concentrate for more than two hours and a marked limitation in his social interactions.  In the second hypothetical, the ALJ asked the VE to consider a person who was "limited to light work, but could perform simple, repetitive tasks only… with no public contact and little or no interaction required with co-workers or supervisors."

AR at 39.  In *Sabin v. Astrue*, "the ALJ determined the end result of [the plaintiff's] *moderate* difficulties as to *concentration*, persistence, or pace was that she could do simple and repetitive tasks." *Sabin v. Astrue*, 337 F.App'x. 617, 621 (9th Cir. 2009) (emphasis added) *see also Stanley v. Astrue*, 2010 U.S. Dist. LEXIS 130755, at *16 (E.D. Cal. Nov. 30, 2010) ("in limiting Plaintiff to simple, repetitive tasks, the ALJ properly incorporated in his RFC finding [the doctor's] opinion that Plaintiff had *moderate* difficulties in maintaining *concentration*, persistence, or pace") (emphasis added).  Therefore, the ALJ properly addressed the Plaintiff's difficulty in concentrating, by limiting the hypothetical to "simple repetitive tasks."  AR at 39.

This hypothetical also sufficiently included Dr. Castillo's assessment of Plaintiff's limitation in social interactions.  In *Moua v. Astrue,* the ALJ's RFC limited the plaintiff to tasks involving "limited social contact." *Moua v. Astrue*, 2009 U.S. Dist. LEXIS 32676, at *33 (E.D. Cal. Apr. 14, 2009).  The Court held this was consistent with a doctor's assessment that the plaintiff had a limited ability to "interact appropriately with co-workers, supervisors, and the general public in a work environment" due to anxiety and depression. *Id.*  As stated, here, the ALJ added a condition in his hypothetical to the VE that there be "no public contact and little or no interaction required with co-workers or supervisors."  AR at 39.

This limitation reflects Dr. Castillo's assessment that Dr. Castillo found that Plaintiff had a marked limitation in his ability to interact with others at an age-appropriate level.  AR at 243.  Likewise, this was incorporated into the RFC given the ALJ recognized that Plaintiff was "impeded by additional limitations" when calculating the RFC. *Id.* at 20.

*Opinion of Dr. MacLaren*

Plaintiff argues the ALJ failed to give specific and legitimate reasons for rejecting the opinion of the treating physician, Dr. MacLaren.  (Doc. 14 at 13).  Plaintiff contends that despite the record supporting Dr. MacLaren's opinion, the ALJ gave it only "moderate weight" but gave "great weight" to the opinion of an examining physician, Dr. Klein. *Id.* at 12-13, quoting AR at 19.  Further, Plaintiff argues if Dr. MacLaren's opinion was given the weight it deserved, it would support a finding that Plaintiff can do no more than sedentary work, which when taken with other factors, amounts to Plaintiff being disabled. *Id.* at 14.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the courts apply a hierarchy of deference to medical opinions based upon the nature of services provided.

However, a physician's opinion is not binding if the ALJ provides "specific and legitimate" reasons for rejecting the opinion, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Notably, the opinion of a treating physician may be rejected whether it is contradicted by another. *Magallanes*, 881 F.2d at 751.

In general, a physician's opinion may be rejected when it is unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). A treating physician's opinion may be given less weight when it "[does] not have supportive objective evidence, [is] contradicted by other statements and assessments of [claimant]'s medical condition, and [is] based on [claimant]'s subjective descriptions of pain." *Id.* In this case, the ALJ noted in her findings that she gave Dr. MacLaren's opinion only moderate weight. AR at 19. She noted the record supported Dr. MacLaren's assessment that Plaintiff could work, but did support his opinion regarding the extent of Plaintiff's limitations. *Id.* In addition, Dr. MacLaren's opinion was contradicted by the opinion of

1  an examining physician, Dr. Klein, whose opinion she gave great weight. *Id.* Lastly, Dr.

2  MacLaren's opinion was based upon Plaintiff's subjective complaints. *Id.*

3      First, the ALJ noted objective evidence that did not support Dr. MacLaren's assessment of

4  Plaintiff's physical limitations. *See id.* at 17-18. For example, she noted Plaintiff was not taking

5  pain medication that was associated with severe disabling pain. *Id.* at 17. Also, the ALJ referred to

6  x-rays of Plaintiff's shoulder that showed it was normal. *Id.* at 18. These are valid considerations

7  when determining what weight should be afforded to a medical opinion. *See Batson*, 359 F.3d at

8  1195.

9      Second, Dr. MacLaren's assessment was also directly contradicted by the opinion of Dr.

10  Klein, to which the ALJ afforded greater weight due to the thoroughness of his evaluation and his

11  expertise in the field of internal medicine. AR at 19. The ALJ relied on Dr. Klein's opinion that

12  Plaintiff was capable of lifting and carrying twenty five pounds frequently and fifty pounds

13  occasionally. *Id.* at 18. Although Dr. Klein was an examining physician, his assessment that

14  contradicted Dr. MacLaren's, it was proper for the ALJ to rely upon when evaluating the weight to

15  give Dr. MacLaren's opinion. *See Batson*, 359 F.3d at 1195. Generally, an ALJ may rely on an

16  examining physician's conclusions that are inconsistent with a treating physician's if the examining

17  physician gathered independent clinical findings that were based upon (1) diagnoses differing from

18  those offered by the treating physician and are supported by substantial evidence; or (2) findings

19  based on objective medical tests that the treating physician had not considered. *See Orn v. Astrue*,

20  495 F.3d 625, 632 (9th Cir. 2007); *Magallanes*, 881 F.2d at 751. Although Dr. MacLaren and Dr.

21  Klein conducted similar tests regarding Plaintiff's back (e.g., straight leg raise, palpation, and range

22  of motion tests), Dr. Klein was more thorough in his overall testing of Plaintiff's physical

23  characteristics, which included tests on his upper and lower extremities as well neurological

24  examinations. *Id.* At 232-34, 314. Therefore, the ALJ acted properly in affording greater weight to

25  Dr. Klein's opinion than Dr. MacLaren's. *See Orn*, 495 F.3d at 632; *see also Magallanes*, 881 F.2d

26  at 751.

27      Lastly, Dr. MacLaren's assessment of Plaintiff's ability to sit, stand, or walk, was based upon

28  Plaintiff's subjective opinion. *Id.* at 363. This was noted by the ALJ in her findings and listed as a

1   reason for only giving moderate weight to the opinion of Dr. MacLaren. *Id.* at 19.  Because the ALJ

2   noted in her findings that Plaintiff's "allegations of disabling limitations are not credible to the extent

3   alleged," she is permitted to consider this as a factor in rejecting Dr. MacLaren's opinion to the

4   degree that it relies on the discounted subjective allegations of Plaintiff. *Id.*; *see Andrews v. Shalala*,

5   53 F.3d 1035,1043 (9th Cir. 1995).

6        Moreover, there is further substantial evidence in the record that militates against the opinion

7   of Dr. MacLaren and supports the opinion of Dr. Klein.  Plaintiff's admitted in his testimony at the

8   hearing, that his shoulder injury and gout were not enough to impede his ability to work.  AR at 17.

9   Also, an MRI of Plaintiff's back showed no evidence of any disc herniation. *Id.* at 339.  There were

10  conflicting opinions between doctors as to whether the Plaintiff had ever suffered a fracture in his

11  right wrist. *Id.* at 330-31. Lastly, the RFC assessment of Dr. Fracchia, while not relied upon by the

12  ALJ, mirrors Dr. Klein's assessment of Plaintiff's physical capabilities and limitations. *Id.* at 234,

13  237.  Dr. Fracchia stated Plaintiff's claimed back pain was credible based on medical evidence, but

14  that his alleged limitations were not supported by the objective medical evidence especially in light

15  of the fact that Plaintiff was not prescribed strong pain medication. *Id.* at 240.

16       In any event, even if the ALJ had given the greatest weight to Dr. MacLaren's opinion, as

17  argued by Plaintiff, a finding that Plaintiff would be restricted to only sedentary work would still be

18  improper.  When asked if  "the combination of [Plaintiff's] impairments restrict [Plaintiff] to doing

19  *no more than* sedentary work," Dr. MacLaren opined no. *Id.* at 363.  Accordingly, even if the ALJ

20  had erred in the weight assigned to the opinion of treating physician, Dr. MacLaren, it amounts to

21  harmless error.

22       C.   The ALJ was proper in not applying SSR 85-15.

23       Plaintiff argues that the ALJ failed to apply SSR 85-15 in assessing Plaintiff's mental

24  impairments regarding his limitation in social functioning.  (Doc. 14 at 16).  Furthermore, Plaintiff

25  argues that a proper application of SSR 85-15 would result in a finding that Plaintiff is "disabled due

26  to a substantial loss of work function." *Id.* at 17.   However, Plaintiff alleged that he has disabling

27  low back pain and problems with his right hand and wrist in addition to his mental impairments.  AR

28  at 29-31.  Thus, because Plaintiff raised both exertional and nonexertional impairments, SSR 85-15

does not apply.  SSR 85-15, 1985 SSR LEXIS 20, at *3 ( the purpose of SSR 85-15 is to clarify "policies applicable in cases involving the evaluation of solely nonexertional impairments"); *Sandgathe v. Chater*, 108 F.3d 687, 980-81 (9th Cir. 1997) (holding SSR 85-15 was inapplicable because the claimant had exertional and nonexertional impairments); *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *cert denied* 116 S. Ct. 1356 (1996) (same).  Accordingly, the ALJ was not required to evaluate Plaintiff's mental impairment under SSR 85-15.

D.   The ALJ failed to apply SSR 00-4p in relying upon vocational expert testminony.

There are two ways for the Commissioner to establish a claimant can perform past relevant work or work in "significant numbers" in the national economy:  testimony of a VE or the Medical-Vocational Guidelines.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  An ALJ may call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999), 62 Soc. Sec. Rep. Service 607.  The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony.  *Id.*, quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987).  The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.*  Limitations supported by substantial evidence must be included in the question.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock*, 240 F.3d at 1163-65.  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Plaintiff argues that the ALJ failed to comply with SSR 00-4p when she failed to "ask the VE whether or not his testimony complied with the [*Dictionary of Occupational Titles*]" and that this

1   amounts to reversible error.[7]  (Doc. 14 at 17).  Furthermore, Plaintiff alleges that because the VE's

2   testimony conflicts with the DOT, his testimony is invalid and "cannot support the ALJ's Step Five

3   finding." *Id.* at 17-18.

4         SSR 00-4p provides that "[w]hen a VE… provides evidence about the requirements of a job

5   or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict

6   between that VE … [and] evidence and information provided in the DOT."  SSR 00-4p, 2000 SSR

7   LEXIS 8, at *8-9.  The Ninth Circuit has held that SSR 00-4p "unambiguously" requires an ALJ to

8   ask a VE whether his/her testimony conflicts with the information in the DOT, and if so to give a

9   reasonable explanation for such conflict.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir.

10  2007).  An ALJ is not permitted to rely on a VE's testimony without following this procedure.  *Id.* at

11  1152.  However, this procedural error is harmless if the VE's testimony does not conflict with

12  information provided in the DOT or if the VE otherwise provided sufficient support for his/her

13  conclusion.  *See id.* at 1154 n.19.

14        Here, the ALJ failed to ask the VE whether his testimony conflicted with the information

15  provided in the DOT.  AR at 21-40.  The ALJ asked the VE two hypothetical questions, the second

16  of which was whether there were available jobs in the national or regional economies that a person of

17  the "same age, education, and work experience as [Plaintiff]" could perform that involved "no public

18  contact and little or no interaction required with co-workers or supervisors."  *Id.* at 39.  The VE

19  responded with three possible positions; "cleaning positions, 323687014, light, SVP 2, 16,000.

20  Assembly, 813684022, light, SVP 2, 14,000.  Packager, 920685026, light, SVP 2, 25,000."  *Id.*  The

21  ALJ did not ask the VE whether his testimony conflicted with the DOT.  *Id.* at 21-40.

22        Plaintiff argues that the VE's testimony conflicts with the DOT as to the duties of the

23  cleaning position.  (Doc. 14 at 17).  Specifically, Plaintiff argues that the DOT notes that a worker in

24  the cleaning job may involve "render[ing] personal assistance to patrons" which is in conflict with the

25  ALJ's hypothetical requiring no interaction with the public.  *Id.* quoting DOT 323.786-014.

26

27      [7] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training
    Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry*

28  *v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and
    may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

However, overall the DOT describes the level of interaction in this position as "N = Not Significant," the lowest level of significance designated in the DOT, and does not appear to conflict with the VE testimony.  DOT 323.786-014.  Similarly, assembly and packager are both designated "N = Not Significant" in regards to level of interaction with people.  DOT 813.684-022, 920.685-026.  Furthermore, neither of the DOT definitions list duties requiring interaction with the public and do not appear to conflict with the VE testimony.  *Id.*  Jobs whose level of interaction is defined as "not significant" in the DOT, have been held to be appropriate for workers with the RFC to have "limited" or "occasional"  coworker contact.  *See Barela v. Astrue*, 2010 U.S. Dist. LEXIS 128645, at *16 (D. Ariz. Dec. 3, 2010); *see also Ayscue v. Astrue*, 2009 U.S. Dist. LEXIS 93494, at *42 (E.D. N.C. Sept. 4, 2009).  Therefore, because the VE testimony does not conflict with the DOT, the ALJ's failure to comply with SSR 00-4p is harmless error.

## CONCLUSION

For all these reasons, the Court concludes the ALJ set forth clear and convincing reasons for rejecting Plaintiff's testimony.  The ALJ's credibility findings and evaluation of the medical opinions are supported by substantial evidence in the record.  Furthermore, the ALJ did not have a duty to apply SSR 85-15 due to both exertional and nonexertional impairments being raised by Plaintiff.  Lastly, although the ALJ failed to apply SSR 00-4p, it amounts to harmless error due to the fact that the VE testimony does not conflict with the DOT.

Accordingly, **IT IS HEREBY ORDERED**:

1.   Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and

2.   The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant

IT IS SO ORDERED.

Dated:   **August 3, 2011**                                      _____/s/ Jennifer L. Thurston_____
UNITED STATES MAGISTRATE JUDGE